**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-31327
Summary Calendar
_____


LONNIE GOLDSTON,

Plaintiff-Appellant,

VERSUS

PHIL STANSELL,
Individually and in His Official Capacity as
a Police Officer for the City of Monroe, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(94-CV-413)
_____

October 7, 1997

Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Lonnie Goldston appeals an adverse jury verdict in his 42 U.S.C. § 1983 action against the City of Monroe, Louisiana, and against certain of its police officers in both their individual and official capacities. We dismiss the appeal for want of -

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

jurisdiction.

I.

Members of the Monroe Police Jump Team were dispatched to apartments located in a high crime area, to respond to reports of drinking and fighting. Although Goldston was not involved with the melee, nor was he a resident of the apartments, he was sitting on a parked car with his nephew in the area surrounding the action. Goldston was approached by Officer Phil Stansell, who was trying to clear the area to maintain a safe perimeter between the bystanders and the melee, and was asked to leave.

The respective accounts of the parties differ concerning the specific words exchanged between Stansell and Goldston, but the parties agree, at a minimum, that Stansell asked Goldston to leave, and Goldston refused to do so. When Goldston turned to pick up his nephew, Stansell grabbed Goldston's arm from behind, and other officers approached immediately. Again, the facts are highly disputed, but it is uncontested that Goldston was wrestled to the ground, struck several times by the officers, and ultimately bitten by a police dog with whose handler Goldston was struggling.

Goldston was handcuffed and charged with six misdemeanors: criminal trespass, interfering with an officer, simple battery on a police officer, being drunk and disorderly, disturbing the peace with loud and profane language, and resisting arrest. The drunk-and-disorderly charge was dismissed before trial, and Goldston was

2

convicted on the remaining five charges. The intermediate appellate court reversed the disturbing-the-peace charge, and the Louisiana Supreme Court reversed the remaining convictions, concluding that the officers lacked probable cause to arrest Goldston, who therefore had a right to use such force as was reasonably necessary to resist the unlawful arrest.

Goldston filed the instant action, alleging violations of his civil rights resulting from the unlawful arrest. The jury rejected each of his claims.

II.

As a threshold matter, we must determine, *sua sponte,* whether we have jurisdiction. Because the district court entered a final judgment on August 27, 1996, the deadline for filing a timely notice of appeal was September 26. *See* FED. R. APP. P. 4(a). Goldston filed his notice of appeal on December 12, well beyond the prescribed time, unless he had filed a timely motion for judgment as a matter of law ("j.m.l.") or for a new trial, which filing would toll the thirty-day period until final disposition of the motions. *See* FED. R. APP. P. 4(a)(4).

Goldston did not file such a motion within the allotted ten days. *See* FED. R. CIV. P. 50(b), 59(b). Rather, he filed on September 3, 1996SSwithin ten days of the entry of final judgmentSSa motion for extension of time in which to file post-judgment

3

pleadings.  In response, the court granted him thirty days to amend his motion for enlargement of time in order to state reasons and to file a brief in support.  Goldston then filed such a memorandum supporting his motions for j.m.l. and new trial within this extended thirty-day period, and the court denied these motions on November 25.

Thus, to the extent that the grant of an extension of time was permissible, Goldston's December 12 filing of his notice of appeal, falling within thirty days of the November 25 order, was timely. Because the district court may not enlarge the time in which a litigant is permitted to file a post-judgment motion for j.m.l. or a new trial, however, *see* FED. R. CIV. P. 6(b), the September 6 order improperly extended the ten-day period.

Although a district court has no authority to extend the time for filing a motion for new trial, if the court purports to do so, we have held that a *pro se* litigant may be justified in relying on that assumption of authority.  *See Fairley v. Jones*, 824 F.2d 440, 442-43 (5th Cir. 1987).  Goldston may not take advantage of this precedent, however, as he was, and is, represented by counsel.

Further, we note that at the time Goldston filed his motion for extension (September 3), time still remained (until September 11) for him to file a timely renewed motion for j.m.l. or new trial.  We see no special circumstance justifying an exception to the rule prohibiting extensions.

4

III.

A.

Although we conclude that we are without jurisdiction, Goldston is not prejudiced by the failure to file post-judgment motions timely. This is because the untimely motions are without merit. For the benefit of the parties, we now proceed to explain why this is so, assuming, *arguendo*, that we have jurisdiction to consider these matters.

B.

Goldston argues that there is no evidence of probable cause for his arrest. Although he was charged with six offenses, a false arrest claim "does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis in original).

Goldston was charged with criminal trespass, which is defined as the offense of refusing to leave the premises of another when reasonably requested to do so by the lawful custodian or his representative. *See* MONROE CRIM. CODE § 12-90(2). Stansell testified that he first approached Goldston in connection with his efforts to provide perimeter security and asked Goldston to "move on." After Goldston refused, Stansell told him that he had been "banned" from

5

ParkviewSSa reference to at least one pre-March 1995 incident in which Goldston had been told by Sergeant Torregrossa that he was not to return to Parkview because he had been sleeping overnight in his van parked in the Parkview lot, in violation of H.U.D. regulationsSSand repeated that he should to leave. According to Stansell, when Goldston refused these repeated requests, he was arrested for trespass.

Goldston staunchly contests Stansell's account and argues that other testimony contradicts Stansell's assertion that he had been banned from Parkview. In fact, Goldston notes correctly that Stansell indicated for the first time at the instant trial (and not at the previous criminal trial) that he had told Goldston to leave because he had been banned from the premises.

Although we do not dispute Goldston's characterization of the evidence, it is not within our province re-visit credibility inferences that the jury may have made concerning Stansell's testimony *vis-à-vis* that of other witnesses. There is evidence in the record from which the jury reasonably could have concluded that Stansell knew that Goldston had been banned, that he informed him of such, and that Goldston thereafter refused to leave.[1] The jury

---

[1] It is this evidence that distinguishes the jury's verdict in the instant case from the Louisiana Supreme Court's holding in the direct criminal appeal. That court noted that the city had not offered any evidence that Stansell had sought to enforce Goldston's previous ban from Parkview when he asked Goldston to leave the premises. Presumably, the city learned from this mistake in the criminal appeal and decided therefore, in the instant trial, to make sure that it introduced Stansell's testimony to that effect.

6

could have concluded, from this evidence, that Stansell had probable cause to arrest Goldston for criminal trespass.[2] Because there is sufficient evidence to support the jury's criminal trespass probable cause finding, we may affirm without investigating the evidence underlying the other five charged offenses. *See Wells*, 45 F.3d at 95.

## C.

Goldston contends that no evidence supports the jury's finding that the officers' actions in permitting a trained K-9 to attack him during his arrest did not constitute excessive force. To state a claim for excessive force, a plaintiff must allege (1) an injury; (2) that resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *See Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993). The reasonableness is to be judged from the perspective of a police officer on the scene, rather than with the benefit of 20/20 hindsight. *See Graham v. Conner*, 490 U.S. 386, 396 (1989).

According to Goldston, he did not curse or strike any of the officers and pleaded with them just to arrest him, but not to hurt

---

[2] Goldston argues further that, even accepting Stansell's testimony as a correct account of the events, Stansell failed to tell him unequivocally to "vacate the premises." Although Goldston notes correctly that Stansell told him "to move on," this is sufficient evidence from which the jury could have concluded that Goldston was on notice to leave.

7

him.  Stansell, on the other hand, testified that Goldston refused to comply with his requests that he vacate the premises and that Goldston "jerked away" when he reached for Goldston's wrist in an attempt to handcuff him.  Officer Vince Hodnett, the dog's handler, testified that he then proceeded to assist Stansell and told Goldston that if he did not stop fighting, the dog would come out of the car.

According to Stansell and Hodnett, Goldston continued to struggle with and curse at the officers, and all three eventually fell to the ground.  It was then that the dog came to Hodnett's aid and attempted to bite Goldston.  Goldston quickly agreed to stop fighting, and Hodnett gave his dog the release command.  There is sufficient evidence from which the jury could have concluded that the officers applied a reasonable amount of force in light of the circumstances as they existed at the time of the arrest.

D.

Finally, Goldston argues that the district court erred in failing to permit him to use offensive collateral estoppel to prevent the defendants from arguing that probable cause existed to arrest him after the Louisiana Supreme Court had found otherwise in the direct criminal appeal.  Because the instant case involves the preclusive effect of a prior Louisiana state court judgment, we apply Louisiana law on collateral estoppel.  *See Daniels v.*

8

*Equitable Life Assurance Soc'y of the United States*, 35 F.3d 210, 213 (5th Cir. 1994).

Goldston does not take issue with the district court's conclusion that Louisiana law does not recognize the doctrine of collateral estoppel.[3] Rather, he argues only that it is inequitable to permit a jury of seven lay citizens to reach a decision in conflict with that reached by a panel of seven Louisiana Supreme Court justices. We find no merit to this argument.

The appeal is DISMISSED for want of jurisdiction.

---

[3] *See Vicknair v. Hibernia Bldg. Corp.*, 479 So. 2d 904, 908 (La. 1985); *Welch v. Crown Zellerbach Corp.*, 359 So. 2d 154, 156 (La. 1978); *Diez v. Daigle*, 686 So. 2d 966, 969 (La. App. 4th Cir. 1996); *Fitch v. Vintage Petroleum*, 608 So. 2d 286, 289 (La. App. 3d Cir. 1992).